## CIRCUIT COURT OF CHESTERFIELD COUNTY

Commonwealth of Virginia

v.

Denise Renee Dumont

April 30, 2002

Case No. CR02F00198-01

BY JUDGE HERBERT C. GILL, JR.

This matter was brought before the Court on April 8, 2002, for a hearing pursuant to the defendant's Motion to Dismiss for Vagueness and Overbreadth. The Court took the motion under advisement for a determination of whether Virginia Code § 18.2-49.1(A) is unconstitutional due to vagueness.

### I. *Background*

The defendant, Denise Renee Dumont, has been charged with parental abduction under Virginia Code § 18.2-49.1(A). Specifically, it is alleged that the defendant picked up her minor child from her grandmother's house in Illinois, took the child to Wisconsin, and refused to tell Robert Dumont, the child's father, where she was. This action was in violation of an order of the Chesterfield County Juvenile and Domestic Relations Court, dated November 27, 2000, requiring that any contact between the defendant and her child be supervised by the father. This order amended a previous order of the Circuit Court of Kane County, Illinois, dated January 20, 2000, granting physical custody of the child to the father. A parental abduction warrant was taken out against the defendant by the father on July 9, 2001, in regard to the alleged violation noted above.

Clearly, the defendant's actions constitute a violation of the November 27, 2000, order of the Chesterfield Juvenile and Domestic Relations Court.

Whether the defendant's violation of the order is also a violation of Virginia Code § 18.2-49.1(A), however, is an entirely different issue. Due to the express language of the statute, a violation of an applicable order is not necessarily a violation of the statute. The language of § 18.2-49.1(A) provides:

> Any person who knowingly, wrongfully, and intentionally withholds a child from the child's custodial parent in a clear and significant violation of a court order respecting the custody or visitation of such child, provided such child is withheld outside of the Commonwealth, shall be guilty of a Class 6 felony.

The language of the statute does not make criminal *any* violation of a custody or visitation order but, rather, only those violations that are "clear and significant." Thus, it is apparent that the legislature intended that not all violations of an order should constitute a violation of the statute. Only clear and significant violations of orders are, therefore, also violations of § 18.2-49.1(A) and punishable as a Class 6 felony.

The defendant argues, in part, that the inclusion of the words, "clear and significant," renders the statute unconstitutionally void-for-vagueness. The Court has given due consideration to the arguments of counsel, the applicable statutes, and case law and will now rule as follows.

## II. *Analysis*

The Court is mindful of the following standards. The burden is on the defendant to prove § 18.2-49.1(A) is constitutionally defective. *Commonwealth v. Carter*, 21 Va. App. 150, 462 S.E.2d 582, 584 (1995), citing *Perkins v. Commonwealth*, 12 Va. App. 7, 14 (1991). "In assessing the constitutionality of a statute, [the Court] must presume that the legislative action is valid." *Id*. The Court must give the words and phrases in a statute their ordinary and usually accepted meaning and "[i]f a statute can be made constitutionally definite by a reasonable construction, the Court is under a duty to give that construction." *Carter*, at 584, citing *Woolfolk v. Commonwealth*, 18 Va. App. 840, 847 (1994), and *Perkins v. Commonwealth*, 12 Va. App. 7, 14 (1991). For the purpose of determining whether a state statute is too vague and indefinite to constitute valid legislation, it is important to note that the Court must "take the statute as though it read precisely as the highest court of the state has interpreted it." *Wainwright v. Stone*, 414 U.S. 21, 22-23 (1973).

"Our Constitution is designed to maximize individual freedoms within a framework of ordered liberty. Statutory limitations on those freedoms are

examined for substantive authority and content as well as for definiteness or certainty of expression." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Here, the constitutional defect being asserted by the defendant is that the statute is unconstitutional for the reason that it is void-for-vagueness. Although the void-for-vagueness doctrine is often invoked in regard to statutes and ordinances regulating free speech, it applies to all criminal laws. R. Rotunda and J. Nowak, *Treatise on Constitutional Law*, 3d ed., § 20.9. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, at 357. Criminal laws should provide notice to the population as to what activity constitutes criminal behavior so as to provide fair notice to individuals before making their activity criminal and also to restrict the authority of law enforcement to arrest persons for a violation of the law. R. Rotunda and J. Nowak, *Treatise on Constitutional Law*, 3d ed., § 20.9.

## A. *Two-Prong Test*

The United States Supreme Court has recently stated in *City of Chicago v. Morales* that vagueness may invalidate a criminal law for *either* of two independent reasons. First, "it may fail to provide adequate notice that will enable ordinary people to understand what conduct it prohibits." Second, "it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 80 (1999). The U.S. Supreme Court has thereby endorsed a "well established two-prong test," applied by the courts of this state and others when undertaking a void-for-vagueness analysis. *Carter*, at 584. The two-prong test to be applied for a determination of whether or not a statute is unconstitutionally void-for-vagueness is as follows.

1. Does the penal statute, "when measured by common understanding and practices," define the proscribed conduct with sufficient particularity to "warn a person as to what behavior is prohibited?" *Id.*, citing *Stein v. Commonwealth*, 12 Va. App. 65, 69 (1991).

2. Does the statutory language encourage arbitrary and discriminatory enforcement? *Id.*, citing *Kolender* at 357 and *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974).

The second prong of the test recognizes "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Id.*, citing *Kolender* at 358. "It forbids the impermissible delegation of 'basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis,

with the attendant dangers of arbitrary and discriminatory applications'." *Carter*, at 584, quoting *Stein*, at 69, quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). The second prong has been described by the U.S. Supreme Court as the more important aspect of the void-for-vagueness doctrine. *Carter*, at 584, citing *Kolender*, at 357. However, both prongs of the test need not be satisfied to find a statute unconstitutional for vagueness. *Morales*, at 80. If the answer to *either* prong of this test, as delineated above, is affirmative, the statute will be unconstitutional. The Court will now apply this well-established two-prong test to the statute before us.

## B. *Prong One Analysis —Notice*

Following the two-prong approach set out above, the Court will first determine whether the statute, measured by common understanding and practices, defines the proscribed conduct with sufficient particularity to warn a person as to what behavior is prohibited.

Due process requires that the government give notice to individuals of government actions that may deprive those individuals of a constitutionally protected life, liberty, or property interest. Furthermore, statutes must be reasonably clear so individuals have adequate notice as to the type of conduct prohibited by statute. R. Rotunda and J. Nowak, *Treatise on Constitutional Law*, 3d ed., 20.9. A statute must be construed as vague when the conduct it forbids is not ascertainable. *Morales*, at 56. The statute's language cannot be subject to a variety of equally compelling and unacceptable interpretations. *Colautti v. Franklin*, 439 U.S. 379, 390 (1979). Accordingly, due process requires specificity in statutes to a degree sufficient to put a reasonable person on notice that a particular activity is prohibited. *Id.*

It has been established that a law will fail to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits. *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966). In *City of Chicago v. Morales*, the U.S. Supreme Court considered an ordinance prohibiting street gang members from loitering with one another or with other persons in any public place. *Morales*, at 41. The ordinance defined the term "loiter" as "to remain in any one place with no apparent purpose." *Id.* In finding the ordinance unconstitutionally vague, the Court noted that the purpose of the fair notice requirement is "to enable the ordinary citizen to conform his or her conduct to the law. No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes." *Morales*, at 58. In *Kolender v. Lawson*, the U.S. Supreme Court reviewed a statute that made it a misdemeanor to loiter or wander the streets without apparent reason

or business and to refuse to identify oneself when requested by an officer. *Kolender*, at 354. The statute had been interpreted by state courts to require that an individual provide "credible and reliable" identification upon request. The Court determined the statute was unconstitutionally vague. *Kolender*, at 361.

In *Grayned v. City of Rockford*, the U.S. Supreme Court upheld a statute and stated, "condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972). The Court ruled the statute in question was valid because "we think it is clear what the ordinance as a whole prohibits." *Id*. In regard to the statute before us, however, it is not at all clear what the statute as a whole prohibits. While it prohibits a "clear and significant" violation of an order, this Court is unable to surmise what violations are, and are not, clear and significant.

This Court is mindful that the U.S. Supreme Court has stated, "[i]t will always be true that the fertile legal imagination can conjure up hypothetical cases in which the meaning of terms will be a nice question." A fertile imagination, however, is not necessary to appreciate the degree of unchecked speculation that the language of § 18.2.49.1(A) invites. Not unlike the words used in *Kolender v. Lawson*, the insertion of adjectives describing the offense has rendered what would otherwise be a clear statute vague.

What *is* clear is that in drafting the language of § 18.2-49.1(A), the legislature expressed the intention that not all violations of custody and visitation orders would constitute a violation of the statute and thereby be punishable as a Class 6 felony. Thus, a reasonable, ordinary person has notice that if they violate an order, that violation *may* constitute a violation of § 18.2-49.1(A). The individual has been informed by the legislature that whether or not their activity will constitute a violation of § 18.2-49.1(A) will depend upon whether or not the violation of the order is "clear and significant." The individual has thereby been informed that he or she may violate the order and still not be subject to the statute, so long as their behavior does not rise to the level of a "clear and significant" violation of the order. Because the words "clear and significant" have not been defined by statute or been given meaning by the courts that have reviewed § 18.2-49.1(A), individuals have been left to speculate for themselves as to the activities in which they may partake without committing a Class 6 felony. In this manner, the vague language of the statute actually encourages speculation that may lead one to believe that their violation of the court order is not also a violation of the statute.

Although the particular facts of this case are irrelevant for determining whether the statute is unconstitutional on its face, they are instrumental in demonstrating the speculation prompted by the vague language. In the case before us, if the defendant did, in fact, believe that her child was being abused by the father, would not taking the child away to safety diminish the

significance of the violation? It is certainly conceivable that a reasonable, ordinary mother might read the statute and conclude, under such circumstances, that taking the child out of harm's way would not amount to a significant violation. Even if the defendant did not fear for her child's safety, she could reasonably speculate that certain visits with her child would not be significant enough to provoke the statute. She may have reasonably concluded that visiting with her child at the grandmother's home for a few minutes or even taking the child to a park for an hour would not violate the statute. Surely, such conduct would amount to a violation of the order, but would it also amount to a "clear and significant" violation of the order? Neither the defendant nor the Court have been provided with sufficient guidance to answer that question.

This speculation is not only allowed by the statute, it is actually *encouraged* by it. Because the statute makes it obvious that there are some violations of orders that will not be punishable under the statute, reasonable individuals will naturally ponder whether or not their conduct will fall under the statute. How one interprets the words "clear and significant" will be dependent upon, and be affected by, their subjective thoughts of the particular facts of their situation, their life experiences, the distance the child is taken, and the length of time over which the violation occurs. It is conceivable that no two people will agree as to when a violation will rise to the level of "clear and significant." Due to the lack of adequate guidance provided by the statute's language, an individual is left to speculate, according to their own subjective determinations, as to whether or not they may proceed with certain conduct. This inevitable speculation is precisely what the highest court of this nation has stated must not be required of an individual when deciphering whether or not they may engage in certain conduct. *Morales*, at 58.

Although this Court does not expect "mathematical certainty," it does expect our criminal statutes to provide reasonable notice to individuals as to what conduct may deprive them of their life, liberty, or property. Virginia Code § 18.2-49.1(A) does not provide such notice. For the foregoing reasons, the Court finds that § 18.2-49.1(A) fails, when measured by common understanding and practices, to define the proscribed conduct with sufficient particularity to warn a person as to what behavior is prohibited. Accordingly, the statute is unconstitutional due to vagueness.

### C. *Prong Two Analysis — Minimal Guidelines for Law Enforcement*

Having already determined that § 18.2-49.1(A) is unconstitutionally void-for-vagueness under the first prong of the test, the Court need not, but will, determine if the statutory language establishes minimal guidelines to govern law enforcement.

Although a finding that a statute fails under *either* prong of the test will render the statute unconstitutional, the U.S. Supreme Court has noted that, "although the [void-for-vagueness] doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine is not actual notice, but the other principle element of the doctrine, the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, at 358. The Court has warned that when the legislature "fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* The Court of Appeals of Virginia has recognized that the void-for-vagueness doctrine "forbids the impermissible delegation of 'basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications'." *Carter*, at 584, quoting *Stein*, at 69, quoting *Grayned*, at 108-09.

As an example, in *Papachristou v. City of Jacksonville*, the U.S. Supreme Court held that the phrase, "prowling by auto" in a statute was so vague that arbitrary police action against selected members of the community was permitted by it. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 171 (1972). Similarly, in *Kolender v. Lawson* the Court determined that a statute interpreted by the state court to require a person to provide "credible and reliable" information was unconstitutionally vague. *Kolender*, at 360. Of concern to the Court was the fact that full discretion was accorded to the police to determine whether or not the individual's identification was "credible and reliable." This necessarily entrusted "lawmaking to the moment-to-moment judgment of the policeman on his beat." *Id.* Such discretion in the hands of police furnished "a convenient tool for harsh and discriminatory enforcement by local prosecuting officials against particular groups deemed to merit their displeasure and confers on police a virtually unrestrained power to arrest and charge persons with a violation." *Id.* The *Kolender* Court emphasized that although the statute stressed the need for strengthened law enforcement tools to combat the epidemic of crime, "it cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity." *Id.* The Court concluded by stating "although due process does not require impossible standards of clarity, this is not a case where further precision in the statutory language is either impossible or impractical." *Id.*

In *City of Chicago v. Morales*, the Court found that the ordinance prohibiting street gang members from loitering failed to establish minimal guidelines to govern law enforcement. *Morales*, at 41. The Court noted that

under the ordinance an officer would have the potential to treat some activities, such as just talking to a friend on the street corner, as too frivolous to be apparent if he suspected some ulterior motive. *Id.* As a result, the Court feared that allowing police to determine whether a person standing on a corner was violating the statute might cause the statute to be applied against innocent conduct.

In *Commonwealth v. Carter*, the Court of Appeals of Virginia determined that a statute making it a Class 6 felony to place a child in a situation where its "health, life, or morals may be endangered," was unconstitutionally vague. *Carter*, at 584. The Court found that the charges against the defendants "arose from a perception by law enforcement officials that the conduct of each defendant may have threatened the 'life, health, or morals' of such children." *Id.* The Court determined that by using the word "may," the legislature criminalized any act which created the possibility of physical or moral harm to the child. Thus, arrests were guided by "subjectivity and personal predilection." *Id.* The decisions of law enforcement may have "resulted from individual moral imperatives, unique perspectives on the specific conduct, or defendant's mere status." *Id.*

In the matter before us, the statute invites just as much speculation on the part of law enforcement as it does for the individual. Due to a lack of guidance in the statute, police, prosecutors, judges, and juries are left to apply their own morals, perspectives, subjective concerns, and personal predilections to situations that may constitute a violation of § 18.2-49.1(A). The danger of arbitrary and discriminatory action by law enforcement is somewhat minimized, in regard to arrest at least, by the fact that only those who violate applicable court orders can be susceptible to violating the statute. However, the vagueness of the statute, combined with the abundance of custody and visitation orders in our society, create the danger that this statute will be applied arbitrarily and discriminatorily not only by police, but also by prosecutors, judges, and juries. The language of the statute invites the very type of "impermissible delegation of basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis" that the Court of Appeals has expressly forbidden. *Id.*

Ultimately, whether determined by police, prosecutors, judges, or juries, someone will be compelled to determine whether or not a violation is "clear and significant." If this case were to proceed to trial by bench, this Court would need to apply its own subjective opinion as to what is, and what it not, significant. If by jury, the jurors would be left to argue over the same question. Whether by judge or jury, the ultimate determination of the defendant's fate will be entirely dependent upon a subjective analysis based upon life

experiences, biases, personal predilections, and whim rather than pursuant to the express language of a statute. This Court will not allow a defendant's fate to be thrown to the mercy of individual policy decisions. Instead, the Court will leave policy matters to the legislature.

The Court finds that the statutory language of § 18.2-49.1(A), with the inclusion of the words "clear and significant," fails to establish minimal guidelines to govern law enforcement. Accordingly, the statute is unconstitutional due to vagueness.

## III. *Conclusion*

Although due process does not require impossible standards of clarity, as with *Kolender v. Lawson*, this is not a case "where further precision in the statutory language is either impossible or impractical." *Kolender*, at 361. If the legislature does not wish that all violations of court orders constitute violations of § 18.2-49.1(A), they will need to provide more explicit guidance than the words "clear and significant."

Having applied the well-established two-prong test to the matter before us, it is evident that the only thing that is "clear and significant" about this statute is that it is unconstitutional. The statute fails both prongs in that it fails to provide adequate notice to individuals as to what conduct is proscribed and it fails to establish minimal guidelines for law enforcement. A finding that the statute failed just one of these prongs would have been sufficient for a finding that the statute was void-for-vagueness. Accordingly, the Court hereby finds that Virginia Code § 18.2-49.1(A) is unconstitutionally void-for-vagueness. The charge against the defendant, Denise Renee Dumont, for violation of § 18.2-49.1(A) shall be dismissed.