COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


APRIL LYNN FREY

v.        Record No. 1106-04-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE LARRY G. ELDER
APRIL 19, 2005


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

Kimberly A. Hackbarth, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


April Lynn Frey (appellant) appeals from her conviction for felony child neglect. On appeal, she contends the evidence was insufficient to prove she acted with the willfulness required by Code § 18.2-371.1(B)(1). We hold the evidence was insufficient to prove criminal negligence, and we reverse and dismiss.

When considering the sufficiency of the evidence on appeal of a criminal conviction, we view the evidence "in the light most favorable to the Commonwealth and grant all reasonable inferences fairly deducible therefrom." Ellis v. Commonwealth, 29 Va. App. 548, 551, 513 S.E.2d 453, 454 (1999).

Appellant was convicted of violating Code § 18.2-371.1(B)(1), which provides in relevant part as follows:

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

The Supreme Court recently clarified the element of intent required to support a conviction under this statute: "The term 'willful act' imports knowledge and consciousness that injury will result from the act done. The act done must be intended or it must involve a reckless disregard for the rights of another [that] will probably result in an injury." Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004). The issue of intent requires an examination not only of the act that created the risk but also of the degree to which the accused "was aware of the danger" that resulted from the act. Ellis, 29 Va. App. at 555, 513 S.E.2d at 457. A showing of "inattention and inadvertence," i.e. simple negligence, is insufficient to justify the imposition of a criminal penalty. Id. at 555-56, 513 S.E.2d at 457. The negligence must be "gross negligence" and must be

> "accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless disregard or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of [her] acts."

Barrett, 268 Va. at 183, 597 S.E.2d at 111 (quoting Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992)).

Applying these principles in Barrett, the Supreme Court affirmed the conviction at issue, which resulted when a ten-month-old infant's two-year-old sister placed him in the bathtub, where he drowned. Id. at 183-86, 597 S.E.2d at 110-12. The conviction at issue under Code § 18.2-371.1(B)(1) involved Barrett's neglect of her daughter, who suffered no physical injuries. Id. at 186, 597 S.E.2d at 112. The evidence established that Barrett knew her daughter was jealous of the infant and had a "propensity for attempting to injure [him]." Id. at 184, 597 S.E.2d

- 2 -

at 111.  Barrett also knew her daughter loved to play in the bathtub, was able to climb in and operate the tub's faucets by herself, and had previously pulled the infant, "head first," into the bathtub with her.  Id. at 185, 597 S.E.2d at 111-12.  Finally, Barrett acknowledged that the sound of water running in the bathroom was audible from other parts of the home.  Id.

The evening before the infant drowned, Barrett stayed out all night drinking beer.  Id. at 185, 597 S.E.2d at 112.  She drove home at 6:00 a.m. and acknowledged that she was still intoxicated enough at that time to have been arrested for driving under the influence.  Id.  Sometime that morning, while "still intoxicated as well as tired," Barrett fell asleep at a time when she "[knew] she was the only one left in the apartment to supervise the children."  Id.

The Court held "the jury could have concluded that Barrett's conduct was willful and accompanied by acts of omission of a wanton nature showing a reckless or indifferent disregard of the life and health of both children. . . .  What we have here is the story of a disaster just waiting to happen . . . ."  Id. at 185-86, 597 S.E.2d at 112.  The Supreme Court distinguished its decision affirming the conviction in Barrett from our earlier decision reversing a conviction in Ellis, stating Barrett's neglect was willful whereas Ellis's neglect was inadvertent.  Id. at 186 n.8, 597 S.E.2d at 112 n.8.

Ellis involved a mother who turned on a burner of her apartment's gas stove to light a cigarette and then left the apartment to visit a friend in a nearby apartment while her two young children were napping.  Ellis, 29 Va. App. at 551-52, 513 S.E.2d at 455.  A fire broke out in Ellis's apartment shortly after she left.  Id. at 552-53, 513 S.E.2d at 455.  In reversing Ellis's conviction, we reasoned as follows:

> While appellant . . . purposefully and intentionally left her apartment . . . , the intent which is relevant to our determination of "bad purpose" does not relate simply to why she left the apartment. Rather, it relates to the degree to which she was aware of the danger when leaving her children unattended.  Here, no evidence establishes that . . . she acted with knowledge or consciousness that

her children would be injured as a likely result of her departure to visit a neighbor for a short period of time in another residential building.

[Further, the evidence] fails to show that appellant left the apartment knowing the burner was on and in conscious disregard of the likely ignition of a grease fire that would ultimately endanger the lives of her children. . . .

. . . [I]nattention and inadvertence have not been heretofore equated with actions taken willfully, thus making them subject to criminal penalty. Similarly, appellant's inability to "see anything wrong with what she had done by going outside and leaving the children alone in the apartment," while clearly misguided, is reflective of simple negligence, not criminal conduct.

Id. at 555-56, 513 S.E.2d at 457 (citations omitted).

We hold, as appellant argues on appeal, that her conduct was more akin to Ellis's than Barrett's. Appellant, unlike Ellis, had knowledge, based on her experience with her young child's prior, early-morning escape from her home, that he was mechanically inclined; able to open the door and single deadbolt; and at risk of injury if she did not take additional steps to contain or supervise him. However, after the July 13, 2003 incident investigated by Officer Jeff Wood, appellant took appropriate steps to do just that by obtaining and installing a double-sided deadbolt that could be opened only with a key. Further, the trial court held that the act of July 27, 2003 for which appellant was criminally responsible was failing to get up to check the new deadbolt lock after she heard her roommate come home around 5:00 a.m. Implicit in this finding is that the court believed appellant had properly engaged the lock before she went to bed and concluded she was alert enough at 5:00 a.m. to have heard her roommate return home. Finally, this evidence also supported the inference that appellant must have told her roommate about installing the double-sided deadbolt and given her a key to it. Although appellant had alcohol on her breath shortly before 7:00 a.m. and did not hear Officer John Wood knock on the door at that time, she reacted appropriately by getting up when she heard a voice she did not recognize in her

living room, and she exhibited no signs of slurring her speech or stumbling. Thus, no evidence supports a finding that appellant's admitted consumption of alcohol the night before negatively impacted her ability to supervise her child.

Here, like in Ellis, the evidence supports the conclusion that appellant was negligent--either in failing to check the deadbolt upon her roommate's early-morning return to the apartment or in failing to better instruct her roommate on the importance of relocking the deadbolt. However, the evidence does not establish that appellant, like Barrett, "created a situation 'reasonably calculated to produce injury, or which [made] it not improbable that injury [would] be occasioned, and [she knew], or [was] charged with the knowledge of, the probable results of [her] acts.'" Barrett, 268 Va. at 184, 597 S.E.2d at 111 (quoting Cable, 243 Va. at 240, 415 S.E.2d at 220). Appellant, unlike Barrett, took significant steps to prevent the recurrence of a prior event that had placed her son at risk of harm. The fact that appellant's actions, though significant, did not eliminate all risk to her child was insufficient to prove criminal negligence. As we recognized in Ellis, "willful maltreatment of a child requires 'something worse than good intentions coupled with bad judgment.'" Ellis, 29 Va. App. at 556, 513 S.E.2d at 457 (quoting Mullen v. United States, 263 F.2d 275, 276 (D.C. Cir. 1958)). Here, appellant's consumption of alcohol and failing to check the door upon her roommate's return amounted, at most, to bad judgment or simple negligence, not the criminal negligence necessary to support a conviction under Code § 18.2-371.1(B)(1).

For these reasons, we hold the evidence was insufficient to prove criminal negligence. We reverse appellant's conviction for violating Code § 18.2-371.1(B)(1) and dismiss the indictment.

                                                              Reversed and dismissed.