COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Petty and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


RAIJAI RIDDICK, S/K/A
 RAJAI RIDDICK

                                                    MEMORANDUM OPINION* BY
v.      Record No. 1795-13-1                        JUDGE WILLIAM G. PETTY
                                                    AUGUST 12, 2014
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                       Johnny E. Morrison, Judge

          W. McMillan Powers (Office of the Public Defender, on brief), for
          appellant.

          Kathleen B. Martin, Senior Assistant Attorney General (Mark R.
          Herring, Attorney General, on brief), for appellee.


        Raijai Riddick was convicted of child neglect under Code § 18.2-371.1(B)(1).  On

appeal, Riddick argues that the trial court erred in holding that the evidence was sufficient to

convict him because the evidence did not demonstrate that his actions were so gross, wanton, and

culpable as to show a reckless disregard for human life.  For the reasons stated below, we reverse

Riddick's conviction.

                                          I.

        "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On November 22, 2012, Chaquita Stokley left her two-year-old daughter in the care of Riddick, the child's father, at Riddick's mother's house. At some point the next day, Riddick's mother gave the child a bath. The water of the bath was so hot that it burned the child's foot.[1]

Riddick called Stokley at approximately 10:50 a.m. to tell her that "something was wrong with [the child's] foot." Riddick told Stokley that he was going to take the child to the hospital; however, Stokley asked Riddick to bring the child to her, so she could take the child to the hospital. Riddick's mother lived approximately one mile, or ten minutes, away from Stokley's location, and approximately fifteen minutes from the nearest hospital.

Twenty minutes passed. Riddick had not brought the child to Stokley. Stokley called Riddick to ask where he was. Riddick said that he "was coming" but asked why Stokley wanted to take the child to the hospital. Riddick further asked Stokley what she was going to tell Social Services. Stokley yelled at Riddick, said she was not concerned about Social Services, and said she just wanted to get medical attention for the child.

Stokley called Riddick a third time when he still had not arrived with the child. Riddick said that he was waiting for a ride. Riddick finally arrived with the child at approximately 12:00 p.m. Stokley screamed and immediately took the child to the hospital when she saw the child's foot. The child had severe burns and multiple blisters on her foot. Medical personnel diagnosed the child with a second-degree burn. The child's foot was treated with ointment and bandaged, and the child was released from the hospital. The injury had healed by the time of Riddick's trial.

At trial, Riddick's mother and girlfriend testified on his behalf. Riddick's mother testified that the child was burned at approximately 10:00 a.m. and that she called Riddick at

---

[1] At trial, the trial court asked the Commonwealth's Attorney whether any charges would be filed against Riddick's mother as a result of the injury. The Commonwealth's Attorney responded that the injury was considered to be an accident; therefore, no charges were brought against Riddick's mother.

approximately 10:15 a.m. to tell him about it. Riddick arrived at the house approximately ten minutes later, and left the house with the child approximately five minutes later because his girlfriend had arrived to take them to Stokley.

Riddick's girlfriend testified that she arrived at Riddick's mother's house approximately fifteen to twenty minutes after Riddick called her. They then immediately left the house and brought the child to Stokley within five minutes.

The trial court found Riddick guilty of child neglect under Code § 18.2-371.1(B)(1) and sentenced him to two years in prison with two years suspended. This appeal followed.

II.

Riddick argues that the evidence was insufficient to prove that his acts were so "gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371(B)(1). We agree.

Riddick challenges the sufficiency of the evidence; therefore, we must "'examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'" Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)). We review the evidence in the light most favorable to the Commonwealth, as the prevailing party below, and determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "Furthermore, we 'accord the Commonwealth the benefit of all inferences fairly deducible from the evidence.'" Brooks v. Commonwealth, 282 Va. 90, 95, 712 S.E.2d 464, 466 (2011) (quoting Glenn v. Commonwealth, 275 Va. 123, 130, 654 S.E.2d 910, 923 (2008)).

Code § 18.2-371.1(B)(1) provides:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

Thus, the statute requires the Commonwealth to prove that Riddick, "through [his] willful act or omission, showed a reckless disregard for [his child's] life." Jones v. Commonwealth, 272 Va. 692, 698, 636 S.E.2d 403, 406 (2006). "Such 'reckless disregard' can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life." Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004). Moreover, "the conduct must 'be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose.'" Jones, 272 Va. at 699, 636 S.E.2d at 406 (quoting Duncan, 267 Va. at 384, 593 S.E.2d at 214); see Mangano v. Commonwealth, 44 Va. App. 210, 216, 604 S.E.2d 118, 121 (2004) (reversing a conviction where the evidence "failed to establish 'knowledge and consciousness that injury will result from the act done'" (quoting Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 111 (2004))). Therefore, we must examine "not only . . . the act that created the risk, but also . . . the degree to which the accused 'was [or should have been] aware of the danger' that resulted from the act.'" Shanklin v. Commonwealth, 53 Va. App. 683, 688, 674 S.E.2d 577, 580 (2009) (alteration in original) (quoting Bean-Brewer v. Commonwealth, 49 Va. App. 3, 11, 635 S.E.2d 680, 684 (2006)).

But "[t]he Commonwealth must show more than mere 'inattention and inadvertence,' the defendant's negligence must rise to the standard of 'gross negligence.'" Id. (quoting Bean-Brewer, 49 Va. App. at 11, 635 S.E.2d at 685); see also Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 357 (2004) ("Criminal negligence . . . is a recklessness or

indifference incompatible with a proper regard for human life."); Ellis v. Commonwealth, 29

Va. App. 548, 555, 513 S.E.2d 453, 457 (1999) ("[S]omething more than negligence must be

proved beyond a reasonable doubt to support [a] conviction."). Furthermore,

> gross negligence must be "accompanied by acts of commission or omission of a wanton or willful nature, showing a reckless disregard or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable results of [his] acts."

Shanklin, 53 Va. App. at 689, 674 S.E.2d at 580 (quoting Barrett, 268 Va. at 183, 597 S.E.2d at

111).

The evidence fails to demonstrate that Riddick showed a reckless disregard for his child's

life. Riddick called Stokley at 10:50 a.m. to inform her that the child's foot had been burned.

Riddick told Stokley that he was going to take the child to the hospital. Stokley said she did not

want Riddick to take the child to the hospital. Instead, Stokley told Riddick to bring the child to

her. Riddick could not drive, so he had to wait for a ride. While waiting for a ride, Riddick put

Neosporin cream on the child's foot. Riddick arrived at Stokley's house at approximately

12:00 p.m.

In convicting Riddick, the trial court noted that Riddick took his time in delivering the

child to Stokley and tried to dissuade Stokley from taking the child to the hospital by asking

what Stokley would tell Social Services. The trial court also noted that Riddick failed to call 911

for emergency assistance. Thus, the trial court held that Riddick's actions showed a reckless

disregard for the child's life.

The evidence certainly shows that Riddick was negligent in the care of the child. But the

evidence fails to show that Riddick was *criminally* negligent in the care of his child. Perhaps

Riddick should have sought medical care for the child more quickly than he did. But his delay

was not criminally negligent; instead, it amounted to mere "inattention or inadvertence." Riddick did not exhibit "recklessness or indifference incompatible with a proper regard for human life." See Kelly, 42 Va. App. at 356, 592 S.E.2d at 357. Riddick put Neosporin cream on the child's foot. He also delivered the child to his mother within an hour and ten minutes. These are not the actions of a reckless or indifferent criminal bent on hiding the burn on the child's foot. These actions do not exhibit a reckless disregard for human life.

Moreover, the injury to the child was not life threatening. The child suffered a burn. Riddick put Neosporin cream on the burn. The doctors at the hospital diagnosed the burn, put ointment on it, and bandaged it. The doctors treated the child's burn in the same manner that Riddick treated the burn. There was no medical evidence presented that the burn was life threatening. There was no medical evidence presented that Riddick inappropriately treated the burn. There was no medical evidence presented that the delay in medical treatment worsened the burn or endangered the health of the child.

Therefore, considering the circumstances of this case, the trial court erred in convicting Riddick of felony child neglect. Riddick's actions were not so "gross, wanton and culpable as to show a reckless disregard for human life."

III.

For the foregoing reasons, we reverse Riddick's conviction.

<u>Reversed.</u>